# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHELTON GLADNEY,            )
                            )
            Petitioner,     )
                            )
       v.                   )    1:12CV3
                            )
JOSEPH B. HALL,             )
                            )
            Respondent.     )

## MEMORANDUM OPINION AND ORDER

**AULD, Magistrate Judge**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entries 1, 16.) Petitioner pled guilty in the Superior Court of Guilford County to conspiracy to traffic in cocaine, trafficking in cocaine by transportation, trafficking in cocaine by possession, maintaining a vehicle to keep controlled substances, robbery with a dangerous weapon and first degree burglary in cases 09 CRS 84775 through 84778 and 10 CRS 75227 and 75228. (Docket Entry 8, Ex. 1; see also Docket Entry 1, ¶¶ 1-6; Docket Entry 16, ¶¶ 1-6.) On June 1, 2010, the trial court consolidated the drug-related convictions and sentenced Petitioner to 35 to 42 months of imprisonment. (Docket Entry 8, Ex. 1; see also Docket Entry 16, ¶ 3.) The trial court also consolidated the robbery and burglary convictions and sentenced Petitioner to a second, consecutive term of 73 to 97

months of imprisonment.  (Id.)  Petitioner did not file a direct appeal.  (See Docket Entry 1, ¶¶ 8, 9.)[1]

Petitioner did file a pro se motion for appropriate relief ("MAR") with the state trial court, which he dated as signed on December 14, 2010 (Docket Entry 8, Ex. 2 at 6),[2] and which the trial court accepted as filed on December 17, 2010 (id. at 2).  The trial court denied the MAR by order dated and filed February 4, 2011.  (Docket Entry 8, Ex. 3.)  The record does not reflect that Petitioner sought review of the trial court's order denying that MAR.

Petitioner, however, did file a second pro se MAR with the state trial court which he dated as signed on May 12, 2011 (Docket Entry 8, Ex. 4 at 13), and which the trial court accepted as filed on or about May 19, 2011 (see Docket Entry 8, Ex. 5 (indicating date filed)).  The trial court summarily denied that second MAR by order dated and filed June 27, 2011.  (Id.; see also Docket Entry 1, ¶ 9(c), (d).)

Petitioner then filed a pro se certiorari petition with the North Carolina Court of Appeals which he dated as submitted on September 6, 2011 (Docket Entry 8, Ex. 6 at 6), and which that court stamped as filed on September 12, 2011 (id. at 2).  The Court

---

[1] Petitioner checked the box for "Yes" as to whether he appealed his convictions (see Docket Entry 1, ¶ 8); however, his ensuing explanation makes clear that he did not file a direct appeal, but instead pursued collateral relief (see id., ¶ 9).

[2] For attachments to Respondent's memorandum in support of his Motion to Dismiss, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

of Appeals denied that petition on September 29, 2011. (Docket Entry 8, Ex. 7; see also Docket Entry 1, ¶ 9(g).) Thereafter, Petitioner apparently filed a pro se petition for discretionary review with the North Carolina Supreme Court (Docket Entry 1-1 at 1-8),[3] which that court accepted as filed on November 14, 2011 (Docket Entry 8, Ex. 8 at 2 (indicating date filed); see also Docket Entry 1, ¶ 11(a)). On December 8, 2011, that court dismissed Petitioner's petition for discretionary review. (Docket Entry 8, Ex. 8.)

Petitioner subsequently submitted his instant Petition to this Court (Docket Entry 1), which he dated as mailed on December 30, 2011 (id. at 14), and which the Court stamped as filed on January 3, 2012 (id. at 1). Petitioner later moved for leave to amend his Petition (Docket Entry 5) and the Court granted that request by deeming the new allegations in the motion as amendments to the Petition to which Respondent had to answer (Docket Entry 6).[4] Respondent then moved to dismiss the Petition on statute of limitation grounds. (Docket Entry 7.) Petitioner responded in opposition (Docket Entry 10) and filed a "Motion to Hold Case in Abeyance" based on a third MAR he claimed to have filed with the state trial court (Docket Entry 15). Thereafter, Petitioner filed

---

[3] For attachments to the Petition, as well as portions of the Petition lacking paragraph numbers, pin citations refer to the page number in the footer appended to said document by the CM/ECF system. The copy of that petition for discretionary review provided by Petitioner with his instant Petition lacks a date and a signature. (See Docket Entry 1-1 at 8.)

[4] In the same motion, Petitioner also opposed an earlier motion filed by Respondent for extension of time and requested the appointment of counsel and an evidentiary hearing. (See Docket Entry 5.) The undersigned denied those portions of the motion. (See Docket Entry 6.)

an Amended Petition purporting to add another ground for relief. (Docket Entry 16.)[5] The parties have consented to disposition of this case by a United States Magistrate Judge. (See Docket Entry 12.)

**Petitioner's Claims**

Petitioner has raised four claims for relief in his Petition: (1) he received ineffective assistance of counsel in that his trial counsel misrepresented the plea bargain as involving concurrent rather than consecutive sentences (see Docket Entry 1 at 5); (2) his trial counsel coerced him into pleading guilty (see id. at 6); (3) "[b]oth sentences was [sic] to be ran [sic] concurrent, and consolidated into one sentence" (id. at 8);[6] and (4) "during [his] plea hearing [he] was on mind impairment medications" (id. at 10). In the filing that the Court deemed a proper amendment (Docket Entry 5; see also Docket Entry 6), Petitioner added allegations that his trial counsel provided ineffective assistance "by failing to bring to the [trial] court's attention that the police illegal [sic] search [sic] his house . . . and illegally held 'him' without bond, and never read him his constitutional rights . . . for three

---

[5] To his Amended Petition, Petitioner attached documents which suggest that he mailed a third MAR to the state trial court on or about October 22, 2012, which that court denied by order dated November 20, 2012. (Docket Entry 16 at 6-7.) Those documents also suggest Petitioner filed a certiorari petition seeking review of the third MAR's denial by the North Carolina Court of Appeals (id. at 6-15), which he dated as signed on January 10, 2013 (id. at 14), and which that court accepted as filed on January 22, 2013, and denied on February 7, 2013 (id. at 15). In light of that denial of Petitioner's certiorari petition, the Court will deny Petitioner's "Motion to Hold Case in Abeyance" (Docket Entry 15). The Court, however, notes that it has not authorized the filing of the Amended Petition.

[6] Petitioner frequently writes in all capitals, but (for ease of reading) the Court utilizes standard capitalization conventions when quoting his filings.

-4-

days until a detective came and seen [sic] him" (Docket Entry 5 at 2). Petitioner's subsequent Amended Petition purports to add a claim of ineffective assistance of counsel in that his trial counsel failed to object to the State's use of a prayer for judgment to increase his prior record level and to enhance his sentence. (See Docket Entry 16 at 3-5.)[7]

### Discussion

Respondent moves for dismissal of the Petition on the grounds that Petitioner filed it outside of the one-year limitation period, 28 U.S.C. § 2244(d)(1). In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 Petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and

---

[7] As the Court did not authorize Petitioner to file the Amended Petition (Docket Entry 16), the Court will treat Docket Entry 16 as a motion to amend the Petition (Docket Entry 1, as previously and permissibly amended by Docket Entry 5), and will direct Respondent to file a response to the motion along with his answer pursuant to Rules 4 and 5 of the Rules Governing Section 2254 Cases.

made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any basis for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case. As a result, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

Here, the state trial court entered judgment against Petitioner on June 1, 2010 (see Docket Entry 8, Ex. 1), and Petitioner did not appeal. As Respondent has asserted (Docket Entry 8 at 3), and Petitioner has not disputed (see Docket Entry 10 at 1-7), Petitioner's convictions became final on June 1, 2010, because he pled guilty and received a mandatory sentence for his consolidated drug trafficking offenses, see N.C. Gen. Stat. § 90-95(h)(3)(a) (2010), and received a sentence in the presumptive range for his robbery and burglary offenses, see N.C. Gen. Stat. § 15A-1340.17(c) & (e) (2010). In North Carolina, defendants who plead guilty have very limited grounds on which they can appeal. See State v. Smith, 193 N.C. App. 739, 741-42, 668 S.E.2d 612, 613-

14 (2008) (enumerating limited grounds for appeal for defendants who plead guilty); see also N.C. Gen. Stat. §§ 15A-979(b) & 15A-1444. Petitioner has not alleged or otherwise shown that any of these grounds existed and thus Petitioner had no right to appeal. Under these circumstances, Petitioner's time to file a habeas petition in this Court began to run on June 1, 2010. Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004); accord Redfear v. Smith, No. 5:07CV73-03-MU, 2007 WL 3046345, at *2 (W.D.N.C. Oct. 17, 2007) (unpublished); Marsh v. Beck, No. 1:06CV1108, 2007 WL 2793444, at *2 (M.D.N.C. Sept. 26, 2007) (unpublished).[8]

The statute of limitations then ran for 199 days until Petitioner filed his first MAR with the state trial court on December 17, 2010. (Docket Entry 8, Ex. 2.)[9] Because Petitioner

---

[8] Even if Petitioner had possessed a right to appeal, any such right would have expired 14 days after the trial court entered judgment against him. See N.C. R. App. P., Rule 4(a)(2). Given the Court's ultimate conclusion that the Petition is timely, the Court need not address Petitioner's entitlement to the benefit of those additional 14 days.

[9] Only "properly filed" documents can trigger tolling. Artuz v. Bennett, 531 U.S. 4, 8 (2000) (describing "properly filed" document as one submitted in accordance with state rules concerning form of document, time limits, and proper court and office for filing). Here, Petitioner's MAR was not "properly filed" on December 14, 2010, the date on which he signed it as submitted. North Carolina law requires that MARs "be filed in the manner provided in G.S. § 15A-951(c)." N.C. Gen. Stat. § 15A-1420(a)(3). Under that subsection, "[a]ll written motions must be filed with the court" accompanied by an appropriate certificate of service. N.C. Gen. Stat. § 15A-951(c). The subsection does not purport to deem MARs as filed at the time of mailing. Id. Further, the order denying Petitioner's MAR specifically stated that the motion was "filed" on December 17, 2010. (Docket Entry 8, Ex. 3.) That declaration is consistent with case law indicating that North Carolina does not apply a mailbox rule for prisoner filings. See Bryson v. Harkleroad, No. 1:10CV36-3-MU, 2010 WL 1328313, at *3-4 (W.D.N.C. April 1, 2010) (unpublished) (citing North Carolina v. Kittrell, No. COA08-988, 197 N.C. App. 403, 677 S.E.2d 14, 2009 WL 1522698, at *3-4 (June 9, 2009) (unpublished)), appeal dismissed, 405 F. App'x 773 (4th Cir. 2010)). Where states do not apply a mailbox rule to filings in their courts, at least three federal circuits have held that federal courts should not apply a mailbox rule to state court filings in making calculations under § 2244(d). See Howland v. Quarterman, 507 F.3d 840, 845 (5th Cir. 2007); Garcia v. Shanks, 351
(continued...)

did not seek review of the trial court's February 4, 2011 order denying his first MAR, the Court must determine the date on which the limitations period began to run again. Respondent urges the Court to restart the clock on February 4, 2011, the date on which the trial court denied the first MAR.

By statute, the limitations period remains tolled for "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2) (emphasis added). The Court thus must decide when Petitioner's first MAR no longer remained "pending," within the meaning of § 2244(d)(2), given that Petitioner failed to seek review of the first MAR's denial. In construing the word "pending" in the context of § 2244(d)(2), the United States Supreme Court has cited the dictionary definitions of "in continuance" or "not yet decided." Carey v. Saffold, 536 U.S. 214, 219-20 (2002) (quoting Webster's Third New Int'l Dictionary 1669 (1993)). Based on this definition, the Supreme Court concluded that an application for state post-conviction relief remained pending "until the application has

---

<sup>9</sup>(...continued)
F.3d 468, 471-72 (10th Cir. 2003); Vroman v. Brigano, 346 F.3d 598, 603-04 (6th Cir. 2003); but see Fernandez v. Artuz, 402 F.3d 111, 116 (2d Cir. 2005). Like other courts, see, e.g., Bryson, 2010 WL 1328313, at *3-4; Vasquez v. Kingston, 422 F. Supp. 2d 1006, 1008-10 (E.D. Wis. 2006), the undersigned finds the majority approach more persuasive. In particular, the view that state rules about when a state filing is deemed filed control in this context has "heightened cogency in light of the United States Supreme Court's statement that when applying § 2244(d)(2), 'an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.'" Vasquez, 422 F. Supp. 2d at 1009 (quoting Artuz, 531 U.S. at 8). For this reason, Petitioner's MAR was not "properly filed" until December 17, 2010.

achieved final resolution through the State's post-conviction procedures." Id. at 220.

Although Carey involved a petitioner who pursued appellate review of a state collateral challenge in an untimely manner (rather than not at all), six appellate courts have concluded that the period allowed by state law for appellate review should count as time that a state court application for collateral review remains "pending," even where a petitioner does not ultimately seek appellate review. See Cramer v. Secretary, Dep't of Corrs., 461 F.3d 1380, 1383 (11th Cir. 2006) ("[L]ogic dictates that the claim is pending regardless of whether the inmate actually files the notice of appeal. 'Pending' refers to the continuation of the process . . . [and] that process is not complete until there is no other avenue the prisoner could pursue."); Williams v. Bruton, 299 F.3d 981, 983 (8th Cir. 2002) ("[W]e do not believe that the "final resolution" of [the petitioner's] application for post-conviction relief occurred until it was too late for him to appeal."); Gravitt v. Tyskiewicz, 35 F. App'x 116, 118 (6th Cir. 2002) ("Regardless of whether a petitioner actually appeals the denial of a post-conviction application, the limitations period is tolled during the period in which the petitioner could have sought an appeal under state law."); Bunney v. Mitchell, 262 F.3d 973, 974 (9th Cir. 2001) (tolling limitations period until expiration of 30 days allowed under California law to appeal denial of state habeas petition), superceded by rule as recognized in Korolev v. Horel, 386 F. App'x 594 (9th Cir. 2010); Gibson v. Klinger, 232 F.3d 799, 804 (10th

Cir. 2000) ("[W]e hold today that, regardless of whether a petitioner actually appeals a denial of a post-conviction application, the limitations period is tolled during the period in which the petitioner *could have* sought an appeal under state law."); Swartz v. Meyers, 204 F.3d 417, 421 (3d Cir. 2000) ("Applying . . . the dictionary definition of 'pending,' leads to the conclusion that for purposes of § 2244(d)(2) 'pending' includes the time for seeking discretionary review, whether nor not discretionary review is sought.").

In addition to comporting with the definition of "pending" endorsed by the Supreme Court in Carey and by the foregoing appellate courts, allowing tolling to continue during the time for seeking appellate review, even in the absence of any such filing, "finds support in the principle of state-remedy exhaustion." Swartz, 204 F.3d at 422. If Petitioner had filed the instant Petition while he still had time to seek review of his first MAR's denial, it could not have proceeded due to the failure to exhaust state remedies. See 28 U.S.C. § 2254(c) (providing that a petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the state to raise, by any available procedure, the question presented"); see also Williams, 299 F.3d at 983 (observing that "tolling the statute of limitations during the appeal period furthers [pertinent federal statutory] goal of 'promoting comity, finality, and federalism' . . . by discouraging petitioners from seeking federal relief until the state courts have

had a full opportunity to review a claim" (quoting Williams v. Taylor, 529 U.S. 420 (2000))).

Although the Fourth Circuit has not squarely addressed the instant issue, the Court finds the decision in Taylor v. Lee, 186 F.3d 557 (4th Cir. 1999), instructive. In that case, the Fourth Circuit tolled the 152 days between the denial of an MAR and the denial of the related certiorari petition by the North Carolina Court of Appeals, holding that state collateral filings generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor, 186 F.3d at 561 (emphasis added). The emphasized language in Taylor clearly calls for tolling during the period in which a petitioner could seek appellate review of state post-conviction petitions, whether or not that period "expir[es]" without invocation of such appellate review. Although this specific language may constitute dicta, because Taylor did not involve a petitioner who failed to seek review in the state appellate courts, see Swartz, 204 F.3d at 422 (acknowledging that pertinent language from Taylor qualified as dicta, but emphasizing that the Fourth Circuit "employed broad language in interpreting § 2244(d)(2), possibly to instruct district courts on the proper tolling procedures"), other circuit courts have cited Taylor as persuasive authority for tolling in this context. See, e.g., Williams, 299 F.3d at 983.

Similarly, in Allen v. Mitchell, 276 F.3d 183, 184 (4th Cir. 2001), the Fourth Circuit cited Taylor for the proposition that the limitations period remained tolled during what it called the "Appeal Period," i.e., "the interval between the lower court decision and the deadline for seeking review." Id. at 185 (emphasis added). The Allen court then remanded the case to the district court for a determination of whether Allen's state certiorari petition qualified as untimely under North Carolina's "unreasonable delay" standard for appellate review applications in post-conviction proceedings. Id. at 187; see also N.C. R. App. Proc. 21(e). Although Allen involved a potentially late invocation of state appellate review, rather than the absence of any such filing (as here), no principled reason appears why the Court should decline to follow the express language used by the Fourth Circuit.

In the face of the foregoing authority, Respondent cites McConnell v. Beck, 427 F. Supp. 2d 578, 582-83 (M.D.N.C. 2006), Rhue v. Carroll, No. 5:05-HC-592-BO, slip op. at 4 (E.D.N.C. Aug. 28, 2006) (unpublished), appeal dismissed, 229 F. App'x 214 (4th Cir. 2007), and Corbett v. McDade, 42 F. App'x 562, 563 (4th Cir. 2002). The Fourth Circuit case cited by Respondent, Corbett, 42 F. App'x at 563, does not provide support for the view that tolling stops on the date of an MAR's denial where the petitioner fails to seek appellate review. In that case, the petitioner did not appeal his MAR's denial and waited over three years to file his federal habeas petition. Id. The district court dismissed two of his claims as time-barred and his third claim on the merits. Id. The

Fourth Circuit merely affirmed the district court's decision, without any discussion of how long, if at all, the petitioner's MAR remained pending after denial by the trial court. Id. Nor does the Court find the Eastern District of North Carolina case cited by Respondent persuasive. First, Rhue relies entirely on Corbett for its conclusion that tolling stopped when the trial court denied the MAR, but (as discussed above) the Court does not view Corbett as providing any authority for that conclusion. Second, although the Supreme Court had rendered its interpretation of "pending" in Carey and nearly all of the circuit court cases cited in this opinion which allowed tolling during the time to seek appellate review even in the absence of invocation of such review had come down,[10] Rhue makes no mention of them or their underlying reasoning.[11]

Finally, although the Court concludes that McConnell bears upon this case, said decision does not stand for the proposition that the period in which a petitioner could seek appellate review

---

[10] The Eleventh Circuit decided Cramer on the same day as the Eastern District of North Carolina decided Rhue.

[11] Other cases in the Eastern and Western Districts of North Carolina have reached the same conclusion as Rhue, but like Rhue, have done so without an explanation of their rationale or a discussion of either Carey or the circuit court cases cited in this opinion. See Davis v. Jackson, No. 3:13-cv-234-RJC, 2013 WL 4495180, at 8 (W.D.N.C. Aug. 19, 2013) (unpublished) (citing Rhue); Butler v. Outlaw, No. 5:11-HC-2106-F, 2012 WL 273384, at *2 & n.3 (E.D.N.C. Jan. 30, 2012) (unpublished) (same); Gooch v. Keller, No. 5:10-HC-2164-FL, 2011 WL 2746462, at *3-4 (E.D.N.C. July 13, 2011) (unpublished) (same). The court in Smith v. Hobbs, No. 5:11-CV-00091 KGB-JTK, 2012 WL 3595993, at *4-5 (E.D. Ark. May 24, 2012) (unpublished), questioned whether it should toll the 30-day appeal period provided by Arkansas law where the petitioner did not actually appeal the denial of a state post-conviction petition based on its interpretation of Carey and Evans v. Chavis, 546 U.S. 189 (2006). The Court declines to follow the reasoning of Smith, because the overwhelming weight of persuasive authority, including reasoned dicta from the Fourth Circuit, supports the contrary view.

-13-

of an MAR denial fails to count as tolled time in the absence of a certiorari petition to the North Carolina Court of Appeals. To the contrary, McConnell recognized that North Carolina law establishes no determinate time limit for filing a petition for a writ of certiorari with the North Carolina Court of Appeals; rather, Rule 21(e) of the North Carolina Rules of Appellate Procedure requires the filing of such petitions without "unreasonable delay[]," N.C. R. App. P. 21(e). See McConnell, 427 F. Supp. 2d at 580. In McConnell, the state trial court denied the petitioner's MAR on September 22, 1995, and he did not seek review of the denial. Id. The petitioner later filed a federal habeas petition in January 2005, which the State challenged as time-barred. Id.

The Court began its analysis of when the federal limitations period resumed by examining the Supreme Court's decision in Evans v. Chavis, 546 U.S. 189 (2006). McConnell, 427 F. Supp. 2d at 581. In that case, the Supreme Court addressed California's collateral review process, which bears similarities to North Carolina's in that it also adopts a reasonableness standard for the timing of applications for appellate review in the post-conviction context. Evans, 546 U.S. at 191-92. The petitioner in Evans waited over three years after the denial of his state post-conviction petition to seek appellate review, with at least six months of that delay deemed unjustified or unexplained. Id. at 192, 195. The Supreme Court noted its earlier observations in Carey that California's reasonable time standard would not lead to filing delays substantially longer than those in states with determinate rules,

id. at 199-200 (quoting Carey, 536 U.S. at 222-23), and that most states have appeal periods ranging from 30 to 60 days, id. at 201 (quoting Carey, 536 U.S. at 219). It then concluded that six months of unexplained delay exceeded what California would consider reasonable and rejected the notion that "an unexplained delay of this magnitude could fall within the scope of the federal statutory word 'pending' as interpreted in [Carey]." Id. (citing Carey, 536 U.S. at 222-23).

In light of Evans, this Court stated:

> North Carolina has not defined what constitutes unreasonable delay for purposes of N.C. R. App. P. 21(e). The time for filing appeals in civil cases is thirty days and fourteen days for criminal cases. N.C. R. App. P. 3(c) & 4(a). The largest amount of time to seek appellate review is sixty days, and it is reserved for post-conviction appellate review of death penalty cases. N.C. R. App. P. 21(f). Therefore, it is unlikely that North Carolina would interpret N.C. R. App. P. 21(e) to extend beyond thirty days, except perhaps for brief, limited periods in very unusual circumstances, which do not arise in this case.

McConnell, 427 F. Supp. 2d at 582. The Court therefore deemed it "inconceivable" that North Carolina would find the petitioner's then eleven-year delay reasonable and dismissed the petition as time-barred. Id. at 583. In other words, because of the length of the delay, the McConnell court did not reach the specific issue of whether the default, 30-day "reasonable" period for seeking review of the denial of an MAR would qualify for tolling.

In light of the overwhelming weight of persuasive authority supporting the tolling of the limitations period during the time when a petitioner could have sought appellate review of the denial

-15-

of a state collateral filing, even where no invocation of such review occurred, and the Court's belief that this view serves the principle of state-remedy exhaustion, the Court finds that the limitations period in this case remained tolled during the time permitted for appellate review of the denial of Petitioner's first MAR. Accordingly, consistent with at least one other decision rendered in this Court, see Broadnax v. Branden, No. 1:08CV411, 2008 WL 5109754, at *2 (M.D.N.C. Dec. 3, 2008) (unpublished) (Eliason, M.J.) (finding "appropriate" under McConnell respondent's adding of 30 days after MAR's denial to tolling period), recommendation adopted, slip op. (M.D.N.C. Jan. 14, 2009) (unpublished), Petitioner shall receive tolling credit for the default 30-day period in which he could have sought appellate review of the denial of his first MAR.

Giving Petitioner the benefit of those 30 days of tolling, the federal habeas limitations period began to run again on March 7, 2011,[12] with 166 days remaining in the one-year period. That limitations period then ran for 73 days until Petitioner filed his second MAR in the state trial court on May 19, 2011, and remained tolled until the North Carolina Court of Appeals denied Petitioner's certiorari petition seeking review of his second MAR's denial on September 29, 2011, with 93 days remaining to pursue federal habeas relief. Petitioner filed the instant Petition on

---

[12] The thirtieth day, March 6, 2011, fell on a Sunday. See N.C. R. Civ. P. 6(a) (providing that, when filing deadline falls on a Saturday, Sunday or legal holiday, allowable period runs until the end of the next day which is not a Saturday, Sunday or legal holiday).

-16-

December 30, 2011,[13] the 93rd day after the North Carolina Court of Appeals denied his certiorari petition as to his second MAR. The Petition thus is timely.[14]

**IT IS THEREFORE ORDERED** that Respondent's Motion to Dismiss (Docket Entry 7) is **DENIED,** that Petitioner's Motion to Hold Case in Abeyance (Docket Entry 15) is **DENIED,** that Petitioner's Motion to Appoint Counsel (Docket Entry 17) is **DENIED,** and that Respondent shall file a response to Docket Entry 16 (which the Court treats as a motion to amend the Petition) and an answer to the Petition (Docket Entry 1, as amended via Docket Entries 5, 6), pursuant to Rules 4 and 5, Rules Governing Section 2254 Cases, within 40 days from the entry of this Order.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

December 17, 2013

---

[13] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court deems the instant Petition filed on December 30, 2011, the date Petitioner signed the Petition (under penalty of perjury) as submitted to prison authorities. (See Docket Entry 1 at 14.)

[14] On March 29, 2013, Petitioner filed a Motion to Appoint Counsel. (Docket Entry 17.) For the reasons stated in the Text Order entered on September 14, 2012, denying Petitioner's prior Motion to Appoint Counsel (Docket Entry 13), the Court declines to appoint counsel at this time.